E-FILED
Monday, 29 March, 2021  11:16:03 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BENJAMIN A. NABB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-04019-SLD-JEH |
| | ) | |
| JOHN E. WHITLEY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Defendant John E. Whitley, Acting Secretary of the Department of

the Army's Motion for Summary Judgment, ECF No. 6.  For the reasons that follow, the motion

is GRANTED.

**BACKGROUND[2]**

I.      **Position**

Plaintiff Benjamin A. Nabb was employed as a Contract Specialist intern at the Army

Contracting Command-Rock Island ("ACC-RI") from May 30, 2017 to May 10, 2018, the

effective date of his termination.  Upon his hire, he signed the Pathways Recent Graduates

Program Participant Agreement, which, among other obligations, set forth a requirement to

maintain fully successful performance.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), John E. Whitley, Acting Secretary of the Department of the Army, is substituted for his predecessor.  The Clerk is directed to update the docket accordingly.

[2] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed material facts, Def.'s Mem. Supp. Mot. Summ. J. 2–16, ECF No. 6-1; Plaintiff's statement of disputed material facts and additional material facts, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 1–17, ECF No. 14-1; Defendant's reply to Plaintiff's additional material facts, Def.'s Reply 1–4, ECF No. 15; and exhibits to the filings.

His initial supervisor was Christine Gerling Cole.  In February of 2018, he transitioned into the Contracting Home Room Branch ("Home Room"), at which point Mary Beth Watkins became his first-level supervisor.  In the Home Room, the essential functions of his job were "[t]o complete the necessary curriculum and training along with being able to demonstrate that he could apply that training and on-the-job workload assignments."  Fact-Finding Hr'g Tr. 73:10–15, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 160–372, ECF No. 9 at 40–80, ECF No. 10 at 1–100, ECF No. 11 at 1–72.[3]

## II.    Accommodation

On May 26, 2017—prior to his start date—Plaintiff requested accommodation for his disabilities: autism and general anxiety disorder.  His request included thirteen separate items. Cole approved the following accommodation: explanations and samples of assignments, goals and agendas in advance when possible, regular guidance and feedback on assignments, discussion of an individual development plan and performance standards, assistance with assigning priorities and suspense dates for Plaintiff's workload, a cubicle with tall partitions, and the option to use headphones or a white noise machine.  Plaintiff's request to record meetings was denied due to confidentiality and consent issues.  While his blanket request for extra time to complete tasks was denied, Cole told Plaintiff that he could ask for additional time to complete assignments on a situational, as-needed basis.  Plaintiff would not be allowed use duty time to work with his vocational rehabilitation counselor, but he could seek assistance from the Equal Employment Opportunity ("EEO") Office or the Employee Assistance Program during duty time.  Plaintiff was assigned a laptop, but Cole informed him that, as an intern, he was not

---

[3] Defendant's Exhibit 1, ECF Nos. 7–11, is the entire investigative file.  When citing to a portion of the investigative file, the Court identifies the title of the document referred to and the page number from the bottom right corner of the document in addition to the ECF page numbers.

eligible for telework.  She directed him to complete all of his work during duty hours because he could not be compensated for time worked outside of these hours.  While Watkins was aware of Plaintiff's limitations and his need for accommodation, she did not personally receive documentation of his disability and was not aware of the nature of his disability.

### III.   Work Behavior

#### a.  Work Outside of Duty Hours

Plaintiff began taking his laptop home every evening to complete his assignments. Watkins considered this to be a problem because Plaintiff could not be compensated for work completed outside of duty hours and because the trainers would not be able to determine whether the assignments could be accomplished during duty hours or whether the work product was Plaintiff's.  *Id.* at 81:16–22.[4]  Watkins sought out advice from Emily Ruiz, her point of contact at the EEO office, about how to assist Plaintiff with time management while curbing his out-of-office computer use.  Ruiz suggested blocking out time during the day for Plaintiff to manage his emails and offering Plaintiff a time management course or assistance from the Computer Accommodation Program.  Watkins reminded Plaintiff that taking his laptop home on a regular basis or working on his laptop after duty hours was not part of his reasonable accommodation.

#### b.  Quizzes

In the Home Room, interns were given weekly quizzes.  While the quizzes were not graded, they were used to evaluate the interns' comprehension of that week's course material. Plaintiff admits that he did not complete quizzes.  On March 19 and 26, 2018, Plaintiff failed to

---

[4] While Plaintiff denies that the trainers' need to determine whether the work could be done during duty hours and whether the work was Plaintiff's was a reason not to let him work after duty hours, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 6, he provides no evidence to contradict it as required under the Local Rules.  *See* CDIL-LR 7.1(D)(2)(b)(2) ("Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page.").

finish two closed-book quizzes, answering only one question after looking up the answer on the internet.  On April 16, 2018, Plaintiff did not work on his quiz during the allotted time but instead copied down the answers when the group was later reviewing the questions.

### c.  Concerns from Trainers

Prior to Plaintiff's transfer to the Home Room, his instructors had noted that he struggled to stay on task.  Watkins-Mehmert Jan. 17, 2018 Emails, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 94–95, ECF No. 7 at 94–95.[5]  Watkins documented a conversation with one of his instructors about Plaintiff's difficulties with passing the CON 090 class: he took the test in a separate room, he was unable to complete the test by himself despite being granted more than double the amount of time as the other interns, and he was only able to finish it after the instructor read and explained the questions to him and they discussed them.  He failed the CON 200 course[6] and the CON 216 course on the first try.

On January 25, 2018, Watkins told Plaintiff that he needed to refrain from being on the internet for non-work-related reasons.  In March of 2018, she met with Plaintiff to discuss his failure to pay attention in class and his body language during class.  She held a progress review meeting with Plaintiff at the end of March at which Plaintiff admitted he could not do tasks independently yet and Watkins noted that he was unable to work by himself on simple tasks even after being given detailed instructions.  During this meeting, Watkins informed him that he was not meeting the standard and was not making adequate progress.[7]

---

[5] Plaintiff denies this but cites only to his Acquisition Training Record, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 140–154, ECF No. 9 at 20–34, and to Office of Personnel Management regulations, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 157–58, ECF No. 9 at 37–38, *see* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 8, which do not contradict Defendant's evidence.

[6] While Plaintiff denies this, the evidence to which he cites does not discuss the CON 200 course at all.  *See* CDIL-LR 7.1(D)(2)(b)(2).

[7] Plaintiff denies that he was not meeting the standard but cites only to his list of reasonable accommodation, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 10 (citing Reasonable Accommodation Mem. 3, Def.'s Mem. Supp. Mot. Summ. J. at 23–25, ECF No. 7 at 23–25), which does not contradict Defendant's evidence.

One of Plaintiff's trainers, Mitch Chapman, sent Watkins a memo on April 3, 2018 stating that Plaintiff was "hav[ing] difficulty understand[ing] the entire procurement process and even understanding what he is buying" and was "show[ing] no effort most times" on the quizzes. Chapman Observations, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 111–112, ECF No. 8 at 11–12.[8]  On April 5, 2018, trainer Angela Hook wrote an email to Watkins stating that she "ha[d] some serious concerns about [Plaintiff]" and that she "d[id] not think he [wa]s capable of being successful in the [contracting] career field."  Watkins-Hook Apr. 5, 2018 Emails, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 115–16, ECF No. 8 at 15–16.  She wrote that he "d[id] not seem to be capable of accomplishing complex tasks," that he "d[id] not seem to have a good grasp of time management," and that "[h]is communication skills [we]re very rudimentary" to the point that she "question[ed] whether he could ever engage in negotiations or other meaningful discourse with contractors or customers." *Id.*[9]  Both Hook and Chapman had been providing Plaintiff with one-on-one training.  On April 9, 2018, Donna Ponce, a contracting officer, met with Hook and Chapman and then with Plaintiff to discuss two of his time-sensitive procurements.  Plaintiff could not accurately explain the status of each package, and Ponce informed him that she was going to reassign both to another intern.  On April 11, 2018, Wendy Streeter, another trainer, provided Watkins with feedback on Plaintiff, among other interns, and stated that he could not work independently, could not carry out more than one assignment at a time, and did not use his time wisely.

---

[8] Plaintiff denies the truth of these statements but cites no evidence in support.  *See* CDIL-LR 7.1(D)(2)(b)(2).
[9] Plaintiff denies Hook's concerns, citing to the testimony of another intern who had been reassigned to one of Plaintiff's contracts that "everything was done" before she received it, Fact-Finding Hr'g Tr. 157:17–21, and to his own affidavit testimony that he "was assigned three separate contracts by the trainers but the trainers did not help [him] set work priorities, did not inform [him] of dates in which each were due, nor did they tell [him] the priorities of any side projects associated with the contracts," Nabb Aff. ¶ 4, Pl.'s Mem. Supp. Resistance Mot. Summ. J. Ex. 6, ECF No. 14-1 at 20–22.  *See* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 12.  None of this testimony contradicts Defendant's evidence.

On April 24, 2018, Watkins wrote a memorandum regarding Plaintiff's failure to progress, noting, among other things, that "he ha[d] failed to demonstrate an understanding of the topics and contracting concepts," that despite "[h]is Team Lead[] and other trainers . . . giv[ing] him the necessary dedicated time and instruction in addition to the training conducted in the classroom setting[, Plaintiff w]as not capable of accomplishing work product without full assistance from others," that he "c[ould not] multi-task to work more than one contract action at a time," that he "ha[d] failed to develop a basic understanding of contracting task/actions and fail[ed] to comprehend and then apply the necessary basic, fundamental procurement concepts," that he lacked accountability and communication skills, that he "fail[ed] in effective self/time management to prioritize and complete his work assignments," and that he "ha[d] not shown a vested interest in [the] success of his assigned projects." Watkins Apr. 24, 2018 Mem. 1–2, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 130–31, ECF No. 9 at 10–11.[10]

## IV.   Termination

Plaintiff was provided with written notice of his termination on May 10, 2018, and it became effective that same day. In the notice of termination, Watkins stated that Plaintiff was being terminated because of his performance and documented the following issues: Plaintiff "ha[d] not demonstrated [he could] work independently even after [he] received dedicated time and instruction from [his] Team Lead[] and they had replicated the tasks with [him] on multiple occasions"; "[his] work assignments ha[d] had to be[]reassigned to avoid risk of not meeting customer award milestones," and he "ha[d] not demonstrated [he could] work [on] more than one contract action at a time"; he "ha[d] not demonstrated the basic underst[andi]ng of contract terms"; his trainers had observed on multiple occasions that he had "failed to follow along with

---

[10] While Plaintiff denies the truth of these statements, he does not cite to any evidence. *See* CDIL-LR 7.1(D)(2)(b)(2).

computer demonstrations, and submitted incomplete quizzes on multiple occasions"; and he was unable to pass CON 200 and CON 216 on the first attempt.  Not. Termination 1–2, Def.'s Mem. Supp. Mot. Summ. J. Ex. 1 at 18–20, ECF No. 7 at 18–20.

## V.    Procedural History

Plaintiff initially contacted an EEO counselor on May 11, 2018 after he was terminated to report discrimination on the basis of sex and disability.  He filed a formal complaint of discrimination on June 22, 2018, alleging discrimination on those same bases.  His complaint was accepted for investigation in a letter dated June 29, 2018.  A report of investigation was issued by investigator Martin Welker on December 2, 2019.

Plaintiff filed this suit on February 3, 2020.  Compl., ECF No. 1.  He alleges that Defendant discriminated against him on the basis of his disability.  *Id.* ¶¶ 6, 7.  The instant motion followed.

## DISCUSSION

## I.    Legal Standard

A court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial responsibility of demonstrating the basis of its motion and showing "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party must then respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986).  Parties may not merely refer to their own pleadings, *Celotex*, 477 U.S. at 324, but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[11]

"[S]ummary judgment is not a paper trial," and the court's role "is not to sift through the evidence, . . . decid[ing] whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  Rather, the duty of the court is to decide "whether there is any material dispute of fact that requires a trial." *Id.*  "A reviewing court examines the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the party opposing the motion." *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986).  However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

## II.    Analysis

In his complaint, Plaintiff alleges that Defendant discriminated against him on the basis of his disability by taking away some of his work assignments, "unilaterally modif[ying] his reasonable accommodations," "h[olding] him to higher standards than other non-disabled workers," and, ultimately, terminating him.  Compl. ¶¶ 6, 7.  Defendant asks the Court to grant summary judgment in his favor, arguing that Plaintiff "cannot demonstrate that his work performance met his employer's reasonable expectations" even though he "ha[d] been accommodated in his position for nearly a year and [had] receiv[ed] extensive one-on-one trainer attention and support."  Def.'s Mem. Supp. Mot. Summ. J. 17–18, ECF No. 6-1.  Plaintiff

---

[11] "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

responds that summary judgment is inappropriate because he "was a qualified individual" and

there remains "a material issue of fact as to whether or not [he] was reasonably accommodated."

Pl.'s Mem. Supp. Resistance Mot. Summ. J. 18, ECF No. 14-1.

### a.  Disability Discrimination

Plaintiff brings this action under Section 504 of the Rehabilitation Act, *see* Compl. ¶ 3;

Def.'s Mem. Supp. Mot. Summ. J. 18, which provides that "[n]o otherwise qualified individual

with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to

discrimination . . . under any program or activity conducted by any Executive agency."  29

U.S.C. § 794(a); *see also Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) ("[The]

Rehabilitation Act prohibit[s] an employer from discriminating against a qualified individual

with a disability because of the disability." (quotation marks omitted)).[12]  For a plaintiff to

prevail on a claim of employment discrimination brought under the Rehabilitation Act, she must

prove that

> (1) she is disabled within the meaning of the statute; (2) that she was otherwise
> qualified for the job in question; (3) that she was discharged or the subject of
> other adverse action solely because of her disability; and (4) the employment
> program of which her job was a part received federal financial assistance.

*Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016).  "The ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff."  *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253

(1981).

---

[12] "In the employment context, the Rehabilitation Act requires that courts use the standards and provisions relating
to employment of the Americans with Disabilities Act of 1990 [("ADA"), 42 U.S.C. §§ 12101–12213] . . . ."  *Novak
v. Principi*, 442 F. Supp. 2d 560, 565 (N.D. Ill. 2006) (citing 29 U.S.C. § 794(d)); *Garg*, 521 F.3d at 736 (applying
the ADA's definition of disability to a Rehabilitation Act claim).  The Court, therefore, cites to ADA and
Rehabilitation Act cases interchangeably.  The Court also cites to cases involving other antidiscrimination laws,
such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, because the statutes are similar.
*See Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("[I]n analyzing claims under the ADA,
it is appropriate to borrow from our approach to the respective analog under Title VII.").

Defendant concedes for the purposes of this motion that "Plaintiff's autism spectrum disorder satisfies the definition of disability under the Rehabilitation Act and that he suffered an adverse employment action when he was removed from his position effective May 10, 2018," Def.'s Mem. Supp. Mot. Dismiss 19,[13] and Defendant's receipt of federal financial assistance is not in dispute.  The Court thus turns to the issue of whether Plaintiff was "otherwise qualified for the job in question," *Felix*, 828 F.3d at 568.

Defendant contends that Plaintiff was unqualified for the job of Contract Specialist intern because "[h]e demonstrated a pattern of inability to work independently, as well as a general failure to progress in his knowledge and ability to apply contracting principles and the contracting process to his assigned procurement actions."  Def.'s Mem. Supp. Mot. Dismiss 17.  As a Contract Specialist intern, Plaintiff was required "[t]o complete the necessary curriculum and training along with being able to demonstrate that he could apply that training and on-the-job workload assignments."  Fact-Finding Hr'g Tr. 73:12–15.  Part of the interns' duties was to "actively participate and do whatever assignments [they] were assigned."  *Id*. at 134:8–12.  The undisputed facts support Defendant's argument that Plaintiff failed to meet reasonable expectations.  Plaintiff admits that he was unable to work independently on assigned tasks, even after trainers had provided him with detailed instructions.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 10, 11.  Multiple trainers noted that Plaintiff could not work on projects by himself, could not work on more than one project at a time, and did not appear to understand basic contracting principles.  *See* Watkins-Mehmert Jan. 17, 2018 Emails; Chapman Observations;

---

[13] While Defendant concedes only that Plaintiff suffered an adverse employment action when he was terminated, Def.'s Mem. Supp. Mot. Dismiss 19, Plaintiff alleges in his complaint that he also suffered other adverse employment actions, such as having some of his work assignments taken away, Compl. ¶ 6.  Because the Court finds that Plaintiff has not shown that there is a genuine dispute of material fact as to whether he was qualified to perform his job, his disability discrimination claim does not survive summary judgment for any of the adverse employment actions alleged.

Watkins-Hook Apr. 5, 2018 Emails.  He did not pass the CON 200 or CON 216 course on his

first try.  Watkins-Nabb Jan. 17, 2018 Email, Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 93, ECF

No. 7 at 93; Watkins-Nabb Feb. 1, 2018 Email, Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 97,

ECF No. 7 at 97.  He admits that he failed to complete several quizzes administered in the Home

Room and sometimes looked up answers on the internet, in violation of quiz instructions.  Pl.'s

Mem. Supp. Resistance Mot. Summ. J. 10, 13.  He would search the internet during duty hours

for non-work-related reasons, Watkins-Nabb Jan. 25, 2018 Email, Def.'s Mem. Supp. Mot.

Dismiss Ex. 1 at 96, ECF No. 7 at 96, and would otherwise fail to pay attention in class, Watkins

Mar. 14, 2018 Mem., Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 102–03, ECF No. 8 at 2–3.

      Plaintiff makes two arguments to support his contention that he was, in fact, qualified.

First, he states that he "was a qualified individual . . . in that he had been accepted into the

internship program."  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 18.  Having been initially

hired as an intern does not show that he was performing the job to Defendant's reasonable

satisfaction: it only shows that he was qualified to be hired.  He also argues that the testimony of

a fellow intern, Allison DeVilder, that Plaintiff was able to do his job and that when she was

assigned to one of Plaintiff's former contracts, the work looked good is sufficient to create a

factual dispute.  *Id.* (citing Fact-Finding Hr'g Tr. 131:24–132:2 (testimony by DeVilder that

Plaintiff "was able to do the job, it just took a little bit of a different explanation to be able to

understand what he was doing"); *id.* at 137:10–11 ("It looked from my end that everything was

good . . . .")).  But DeVilder's general commentary does not contradict the evidence from his

supervisors as to the specific ways in which he was unable to do his job.  *See Leffel v. Valley Fin.

Servs.*, 113 F.3d 787, 791 (7th Cir. 1997) (affirming the district court's grant of summary

judgment after it had found, in part, that affidavits by the plaintiff's subordinate and customer

that "spoke in glowing terms of [the plaintiff's] service and capabilities" were "insufficient to establish a question of fact as to whether [the plaintiff] was performing to [her employer's] satisfaction" because they did not address the specific reasons for her termination).  Plaintiff has not shown that there is a genuine dispute of material fact that he was able to fulfill the reasonable requirements of his job.[14]

### b.  Reasonable Accommodation

Plaintiff also argues that summary judgment should not be granted because a genuine dispute of material fact exists as to whether he was reasonably accommodated.  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 18.  Defendant contends that Plaintiff "has neither raised nor exhausted any claim of failure to accommodate his disability," and thus this issue is not properly before the Court.  Def.'s Reply 5, ECF No. 15; *see also* Def.'s Mem. Supp. Mot. Dismiss 24 n.8 ("[Plaintiff] did not exhaust a claim for any failure to accommodate, as demonstrated in the record by the agency's letter accepting his claims for investigation and [Plaintiff's] concurrence in the transcript with the investigator's summary of his claims." (citation omitted)).  Even if it were proper for the Court to address Plaintiff's failure to accommodate claim, Plaintiff has not

---

[14] Furthermore, Watkins points to these same issues in Plaintiff's termination notice.  *See* Not. Termination 1–2 (stating that Plaintiff was terminated because he had not demonstrated he could work independently even after receiving extra instruction from trainers, his work assignments had to be reassigned out of concerns that milestones would not be met, he was not able to work on more than one contract action at a time, he did not appear to have a basic understanding of contract terms, he failed to follow along with class demonstrations, he frequently submitted incomplete quizzes, and he failed CON 200 and CON 216 on the first attempt).  And Plaintiff has not shown that any of these reasons was a pretext for discrimination.  While Plaintiff does not argue this point in his response, the Court will briefly address it because it is related to whether Plaintiff has shown that he was meeting Defendant's legitimate expectations.  *See Leffel*, 113 F.3d at 794 (noting that the question of whether a plaintiff was meeting her employer's legitimate expectations "necessarily overlaps with the veracity of the performance-related reasons" her employer cited for terminating her).  "In determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge," *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 505 (7th Cir. 2017) (alteration in original) (quotation marks omitted); it is the plaintiff's burden to demonstrate that the proffered reasons were pretexts, *see Burdine*, 450 U.S. at 253.  Because Plaintiff offers no evidence to show that Watkins did not honestly believe the reasons she gave for terminating Plaintiff, the Court finds that no dispute of fact exists as to this issue.

shown that there is a dispute of fact as to whether Defendant did reasonably accommodate Plaintiff.

"To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co*., 417 F.3d 789, 797 (7th Cir. 2005). To determine a reasonable accommodation, an employer and employee should "engage in an interactive process." *Id*. (quotation marks omitted). "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process." *Id*. At summary judgment, it is the burden of the plaintiff to provide evidence that his employer did not reasonably accommodate his disability. *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008) ("To survive [the defendant's] motion for summary judgment on her failure-to-accommodate claim, [the plaintiff] needed to present evidence that, if believed by a trier of fact, would show . . . that [the defendant] failed to reasonably accommodate that disability.").

The Court notes that Plaintiff argues only that "Watkins and her trainers completely failed to follow the accommodation process that had been previously approved for him on June 29, 2017," Pl.'s Mem. Supp. Resistance Mot. Summ. J. 17—he does not contend that the approved accommodation was not adequate. Thus, the following analysis is limited to examining whether there is a genuine dispute of fact as to whether Defendant failed to abide by the approved reasonable accommodation.

Plaintiff's request for reasonable accommodation was approved as follows: "[a]ssignments w[ould] be explained to [him], sometimes orally and written, and [he] w[ould] be provided samples"; "goals and agendas [would be] provided in advance when possible,"

13

although "[t]he nature and pace of contracting work d[id] not always lend itself to preplanned meetings with well-defined purposes and agendas"; he would "receive regular guidance and feedback," in particular through "regular thirty minute to one hour meetings to review tasks and progress with [his] team lead"; he would "receive assistance in assigning priorities and suspense dates for [his] workload"; and his team lead and the intern coordinator would show him where written material was located in advance, for tasks where this was possible.  Reasonable Accommodation Mem. 1–2, Def.'s Mem. Supp. Mot. Summ. J. 23–25, ECF No. 7 at 23–25. While his request to use a tape recorder for meetings was denied due to issues with confidentiality and consent, he could use a tape recorder for his own notes and thoughts, and he would be allowed a few minutes after meetings or learning new tasks to record his thoughts and tasks.  *Id*. at 2.  He would be granted a laptop, although he, like all interns, would not be allowed to telework, and his work needed to be completed during duty hours.  *Id*.  He could use duty time to seek assistance from the EEO office or Employee Assistance Program but not to work with a vocational rehabilitation counselor.  *Id*.  While he would not be granted blanket approval for extra time to complete his assignments, he could make requests for extra time on individual assignments.  *Id*. at 3.  To create a quiet work area, his cubicle had tall partitions, and he could use headphones or a white noise machine if necessary.  *Id*.

Plaintiff argues that summary judgment is not warranted because "no testimony in the record establishes that [Watkins and his trainers] had complied with the requirements of the reasonable accommodation letter."  Pl.'s Mem. Supp. Resistance Mot. Summ. J. 18.  But it is Plaintiff who must show, through evidence, that the accommodations have not been complied with.  *See King*, 550 F.3d at 600.  This he does not do.  While he states in his response that "assignments were not explained to him orally or in writing," he was not given goals or agendas,

14

he did not receive assistance in assigning priorities and suspense dates, "he did not have arrangements with his team lead as to where the written material for him was located on the shared drive," and he did not receive additional time to complete his work, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 17, he cites to no evidence to support this, which he must do to survive summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

And he does not manage to contradict the evidence to which Defendant cites to show that Plaintiff's reasonable accommodation was followed. Plaintiff admits that he was aware of where written materials were kept, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 7, and that "his reasonable accommodation did not allow him to work on his laptop after duty hours or to take his laptop home on a regular basis," *id*. at 8. He does not deny that—when completing his CON 090 exam—he was given a separate room and double the allotted time and that when he was not able to complete the written exam, the instructor discussed the questions with him and allowed him to answer orally. *Id*. To rebut a statement by Watkins that Plaintiff was falling behind and not making adequate progress, he cites only to the portion of the reasonable accommodation memo that *denied* his request for a blanket grant of extra time to complete his projects. *See id*. at 10 (citing Reasonable Accommodation Mem. 3). He admits that on many occasions Chapman sat with him and explained to him how to start his acquisitions. *Id*. at 10–11. He attempts to rebut a statement by Hook that he was unable to provide her with a market research report by citing to his accommodation list and to a paragraph in his affidavit stating that Watkins and his trainers did not show him where documents were on the shared drive, *id*. at 11–12 (citing Reasonable Accommodation Mem. 1–2; Nabb Aff. ¶ 7, Pl.'s Mem. Supp. Resistance Mot. Summ. J. Ex. 6, ECF No. 14-1 at 20–22 ("Watkins and the trainers at the [Home Room] did not show me where documents were pertaining to the tasks on the shared drive.")), but nothing in

15

these general statements about document provision proves that market research reports were among those documents to be provided to him, and he previously admitted in his response that he was aware of where written materials were kept, *id*. at 7.  Even if the Court could consider Plaintiff's allegations that Defendant failed to honor his reasonable accommodation, this claim would not survive summary judgment.

While Plaintiff also claims that there is a material issue of fact as to whether he was reasonably accommodated because "[a]t no time did Watkins or any other Army employee assign [Plaintiff] a mentor as required under his position description," *id*. at 18–19, the assignment of a mentor was not part of his reasonable accommodation, and so any alleged failure to do so has no bearing on a failure to accommodate claim.

Because Plaintiff has not established that there is a genuine dispute of material fact as to his disability discrimination claim or any failure to accommodate claim, Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant John E. Whitley's Motion for Summary Judgment, ECF No. 6, is GRANTED.  The Clerk is directed to enter judgment and close the case.

Entered this 29th day of March, 2021.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE